UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
APR 2 7 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-313-GWU

BILL A. HOWARD,                                                PLAINTIFF,

VS:                         MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT,

## INTRODUCTION

Bill Howard brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Howard, a 41 year-old former truck servicer, saw mill worker and automobile detailer/changer with a "limited" education, suffered from impairments related to degenerative disc disease and borderline intelligence. (Tr. 13-14). Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of heavy level work. (Tr. 20). Since the claimant would be able to return to all of his past relevant work, he could not be considered totally disabled. (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

Howard was found capable of performing heavy level work, reduced from a full range by a limitation to simple, one to two step tasks as well as work requiring no more than minimal interaction with the general public, in an administrative decision which became final on July 27, 2001. (Tr. 59). Based

5

upon the testimony of a vocational expert, the ALJ determined that the plaintiff could perform all of his past relevant work. (Tr. 57). Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v. Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-3(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding..." In the present action, the ALJ found that "new and material evidence" had not been presented to support a different finding with regard to the plaintiff's mental and physical condition. (Tr. 12). Therefore, a finding that the claimant could return to his past work and was not disabled was again made.

The ALJ properly determined that Howard did not present sufficient "new and material" evidence to warrant a different finding with regard to his physical condition on his current application. Dr. David Wohlwend, a treating physician at the Tennessee Valley Pain Management Center, indicated that the plaintiff would have a decreased ability to lift, stand, climb and bend. (Tr. 127). However, the physician did not specify the severity of the restriction and did not cite what objective medical data supported the finding. (Tr. 125-127). Treatment notes from Tennessee Valley deal mainly with treatment for pain complaints. (Tr. 119-124, 169-196). An x-ray ordered by the doctor and taken at Appalachian Regional Healthcare revealed only the existence of old degenerative disc disease at L4-L5 and L5-S1. (Tr. 198). Furthermore, Dr. Calixto Hernandez, a non-examining medical reviewer, opined that the claimant could still perform the

6

full range of heavy level work. (Tr. 140-148). Therefore, under these circumstances, the Court finds that the ALJ dealt properly with the evidence of record relating to Howard's physical condition.

Howard argues that the ALJ erred in concluding that he did not meet the requirements of Section 12.05(C) of the Listing of Impairments concerning mental impairments. This Listing requires a claimant to produce:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;

20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05(C). The regulations further provide that: "Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental stage [before age 22]." 20 C.F.R., Part 404, Subpart P, App. 1, Section 12.05. Thus, to satisfy the requirements of Section 12.05(C), a claimant must demonstrate an IQ in the appropriate range which was manifested in the developmental period as well as another mental or physical impairment.

In the July, 2001 denial decision, the ALJ noted the existence of a current verbal IQ score, produced by testing from Psychologist Gary Maryman in December of 2000, which was within Listing range. (Tr. 53). The ALJ ultimately concluded that the plaintiff had failed to demonstrate the required deficits in adaptive behavior which manifested themselves prior to the age of 22. (Tr. 54).

On the current application, Howard asserts that "new and material" evidence has been submitted which supports his claim that the Listing has been satisfied. He cites a new report from Maryman from April, 2002, again demonstrating a verbal IQ within the required Listing range, and which also included a review of Harlan County school records showing W.A.I.S. IQ testing

7

from 1975, which revealed an verbal IQ score of 67, a performance IQ score of 54 and a full scale IQ score of 57. (Tr. 130-131). The school records from Harlan County documenting these scores were also submitted into evidence. (Tr. 89-90).

The Court finds that substantial evidence supports the ALJ's determination that the Listing has not been met. While the 1975 IQ testing results were very low, the school records also included IQ testing from 1980, when the plaintiff was almost 18 years-old, revealing an IQ score of 73 on the Stanford-Binet test. (Tr. 15, 131). This score was noted by the school officials to represent a significant improvement over the earlier scores. (Tr. 89). This score, from a later time in the developmental period, appears more reliable. The plaintiff asserts that this score should not be considered because it was not broken down into verbal, performance and full scale sections like the W.A.I.S. However, the claimant has not cited any authority indicating that such a breakdown is required for an IQ score to be considered valid. The regulations provided that:

> In cases where more than one IQ is customarily derived from the test administered, i.e., where verbal, performance, and full scale IQs are provided as on the WAIS, the lowest of these is used in conjunction with the listing 12.05.

20 C.F.R. Section 12.00D. This section suggests that while such a breakdown is certainly permissible, it does not appear to be required for IQ score validity. Furthermore, the school records state that the plaintiff had not been in special education since 5th grade and was currently only two credits short of completing high school in regular classes.[1]   (Tr. 89). The record also indicates that Vocational Expert Julian Nadolsky, whose testimony supported the July, 2001

---

[1] The plaintiff did not complete high school. (Tr. 207).

8

denial decision, testified that the claimant had a history of performing semi-skilled work. (Tr. 57). Such work would appear inconsistent with a finding of life-long mental retardation. Therefore, the Court must reject Howard's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the __27__ day of April, 2005.

G. WIX UNTHANK
SENIOR JUDGE

9